## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOBRICK WASHROOM EQUIPMENT, INC.,<br><br>            Plaintiff,<br><br>    v.<br><br>Y.STERN ENGINEERING (1989) LTD., A/K/A STERN ENGINEERING LTD., A/K/A STERN ENGINEERING 1989, A/K/A STERN FAUCETS, an Israeli Corporation, BARANTEC, INC., a Delaware Corporation, and DOES 1-9,<br><br>          Defendants. | C.A. No. 1:25-cv-00376-JLH<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANTS STERN ENGINEERING AND BARANTEC, INC.'S
## OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

Dated:  June 9, 2025

OF COUNSEL:

Adam P. Samansky
Peter J. Cuomo
Amanda R. Metell
**MINTZ LEVIN COHN FERRIS
  GLOVSKY & POPEO PC**
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
apsamansky@mintz.com
pjcuomo@mintz.com
ametell@mintz.com

**CHIPMAN BROWN CICERO & COLE, LLP**
Joseph B. Cicero (#4388)
Gregory E. Stuhlman (#4765)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
cicero@chipmanbrown.com
stuhlman@chipmanbrown.com

*Attorneys for Defendants Y.Stern Engineering*
*(1989) Ltd., a/k/a Stern Engineering Ltd.,*
*a/k/a Stern Engineering 1989, a/k/a Stern*
*Faucets, and Barantec, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

SUMMARY OF ARGUMENT ................................................................................1

ISTATEMENT OF FACTS ...................................................................................3

     A.    The '157 Patent Claims......................................................................3

     B.    Procedural Background.......................................................................5

LEGAL STANDARD..........................................................................................5

ARGUMENT ...................................................................................................6

     I.    THE LOTUS DISPENSER CANNOT INFRINGE CLAIMS 14 AND 45 BECAUSE IT LACKS A "SPOUT COMPRISING A LID." ...............................9

            A.    Prosecution Disavowal.............................................................10

     II.    THE LOTUS DISPENSER CANNOT INFRINGE CLAIMS 14 AND 45 BECAUSE IT LACKS A "NECK EXTENDING FROM THE RESERVOIR."............................................................................................14

     III.    THE LOTUS DISPENSER CANNOT INFRINGE CLAIM 45 BECAUSE IT LACKS "A CAP THREADED TO THE RESERVOIR AND COUPLING THE NECK TO THE RESERVOIR"..............................................16

     IV.    THE LOTUS DISPENSER CANNOT INFRINGE CLAIMS 16-18....................19

CONCLUSION..................................................................................................19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amgen Inc. v. Coherus BioSciences Inc.*,
   931 F.3d 1154 (Fed. Cir. 2019) .......................................................................... 6

*Amgen Inc. v. Coherus Biosciences Inc.*,
   2018 WL 1517689 (D. Del. Mar. 26, 2018) ........................................................ 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................. 5

*Autogiro Co. of Am. v. The United States*,
   384 F.2d (Fed. Cir. 1967) ............................................................... 15, 16, 18, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 5, 6

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
   713 F.3d 1090 (Fed. Cir. 2013) ...................................................................... 7, 13

*Cumberland Pharmaceuticuals Inc. v. Sagent Agila LLC*,
   2013 WL 5913742 at (D. Del. Jan. 23, 2025) ..................................................... 6

*Cybor Corp. v. FAS Techs., Inc.*,
   138 F.3d 1448 (Fed. Cir. 1998) ........................................................................... 6

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. Ltd.*,
   535 U.S. 722 (2002) .......................................................................................... 8, 9

*Graver Tank & Mfg. Co., Inc., v. Linde Air Prods. Co.*,
   339 U.S. 605 (1950) ........................................................................ 8, 16, 18, 19

*Hill-Rom Services, Inc. v. Stryker Corporation*,
   755 F.3d 1367 (Fed. Cir. 2014) ........................................................................... 7

*Kajeet, Inc. v. Gryphon Online Safety, Inc.*,
   2021 WL 780737 (D. Del. Mar. 1, 2021) ............................................................ 6

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*,
   324 F.3d 1308 (Fed. Cir. 2003) ........................................................................... 8

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995),
   *aff'd*, 517 U.S. 370 (1996)................................................................................... 7

**Page(s)**

*Minnesota Min. & Mfg. Co. v. Chemque, Inc.*,
   303 F.3d 1294 (Fed. Cir. 2002) ........................................................................ 2, 19

*Ottah v. Fiat Chrysler*,
   884 F.3d 1135 (Fed. Cir. 2018) ........................................................................ 6, 11

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ...................................................................... *passim*

*Speedtrack, Inc. v. Amazon*,
   998 F.3d 1373 (Fed. Cir. Jun. 3, 2021) ................................................................. 7

*Tech. Props. Ltd. v. Huawei Techs. Co.*,
   849 F.3d 1349 (Fed. Cir. 2017) ............................................................................ 7

*UTTO Inc. v. Metrotech Corp.*,
   119 F.4th 984 (Fed. Cir. 2024) ............................................................................. 6

*Wahpeton Canvas CO. v. Frontier, Inc.*,
   870 F.2d 1546 (Fed. Cir. 1989) ........................................................................ 2, 19

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) .................................................................................................. 8

*Wyers v. Master Lock Co.*,
   616 F.3d 1231 (Fed. Cir. 2010) .......................................................................... 13

**Statutes and Rules**

35 U.S.C. § 112 ............................................................................................... 1, 19

35 U.S.C. § 271 ..................................................................................................... 1

Federal Rule of Civil Procedure 12(b)(6) .................................................. 1, 5, 6, 19

iii

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1.2, Defendants Y.Stern Engineering (1989) Ltd., a/k/a Stern Engineering Ltd., a/k/a Stern Engineering 1989, a/k/a Stern Faucets and Barantec, Inc (collectively, "Defendants") hereby moves this Court to dismiss the Complaint (D.I. 1, hereinafter the "Complaint") by Plaintiff Bobrick Washroom Equipment Inc. ("Plaintiff") for failing to state a claim upon which relief may be granted.

## SUMMARY OF ARGUMENT

This case should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Taking all facts plead in the complaint to be true, Plaintiff fails to make out a factual or legal basis for infringement under 35 U.S.C. § 271. For a claim of infringement to succeed, every single limitation in the asserted claims must be present either literally or by equivalents in the accused product. The Complaint contains a single count alleging that Stern Engineering's Lotus Topfill soap dispenser (the "Lotus dispenser") directly infringes claims 14, 16, 17, 18, and 45 of Plaintiff's U.S Patent No. 8,579,157 (the "'157 patent") literally or under the doctrine of equivalents, along with a claim chart identifying the purported structures in the Lotus dispenser that allegedly satisfy each of those limitations found in asserted independent claims 14 and 45. D.I. 1 ¶¶ 35-43; *see also* D.I. 1, Ex. C. Yet here, accepting Plaintiff's diagrams and definitions provided in Exhibit C of the Complaint as true, the accused Lotus dispenser cannot infringe the asserted claims because it lacks one or more limitations required by each of the asserted independent claims 14 and 45 of the '157 patent, whether viewed literally, or under the doctrine of equivalents. [1] Therefore, as a matter of law, the Lotus dispenser cannot infringe claims 14 and 45, nor any of the other asserted claims depending therefrom.

---

[1] Claims 16, 17, and 18 are dependent of claim 14 of the '157 patent. Complaint ¶ 23; Complaint at Ex. A (D.I. 1-1 at 21). Dependent claims contain every limitation of the claims from which they depend. 35 U.S.C. § 112, fourth paragraph. "The law is clear that if an independent claim . . . is not infringed, claims dependent on that independent claim . . . cannot be found to be infringed."

The reasons why the Lotus dispenser cannot infringe any asserted claims is plain and straightforward. First, claims 14 and 45 of the '157 patent recite a spout "comprising a lid." D.I. 1-1 at 12, 14. The spout of the Lotus dispenser does not comprise a lid, and, by the Plaintiff's own admissions and disavowals made during the prosecution of the '157 patent, Plaintiff is precluded from asserting any equivalents.

Second, claims 14 and 45 of the '157 patent recite a "neck extending from the reservoir." D.I. 1-1 at 12, 14. To the extent that the Lotus dispenser comprises a "neck" as labeled by Plaintiff's Exhibit C, that part of the Lotus dispenser does not extend from the reservoir because it is neither contiguous with nor adjacent to the identified "reservoir." Instead, there is at least an 800-millimeter liquid soap tube intervening between the alleged "reservoir" and "neck" of the Lotus dispenser. D.I. 1-3 at 3 fig. 1. Nor does the Lotus dispenser contain an equivalent to a "neck extending from the reservoir." D.I. 1-1 at 12, 14.

Third, claim 45 of the '157 patent includes a "cap threaded to the reservoir and coupling the neck to the reservoir." D.I. 1-1 at 14. To the extent the structure identified in Exhibit C comprises a "cap," it does not "couple" the structure labelled in Exhibit C as "neck" to the alleged "reservoir" because these three structures are not contiguous with one another, and the two structures allegedly coupled, the alleged "neck" and "reservoir" are not adjacent (again with at least an 800 mm tube intervening between them), and so cannot be "coupled" by the alleged "cap" because they are nowhere near one another. D.I. 1-3 at 3 fig. 1. Nor does the Lotus dispenser

---

*Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1300 (Fed. Cir. 2002) (citing *Wahpeton Canvas CO. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989)) (holding that it is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed). Thus, the product must infringe claim 14 to infringe claims 16, 17, and 18.

contain an equivalent to a "cap threaded to the reservoir and coupling the neck to the reservoir."

D.I. 1-1 at 14.

## STATEMENT OF FACTS

**A.    The '157 Patent Claims**

The '157 patent, entitled "Automated Fluid Dispenser," issued on November 12, 2013. D.I.

1-1 at 2. It contains 47 claims directed to a fluid dispenser, including independent claims 14 and

45 and dependent claims 16, 17, and 18, which all depend on claim 14. D.I. 1 ¶ 29.

Claim 14 recites:

**14.** a fluid dispenser comprising:

a reservoir;

**a neck extending from the reservoir** defining a conduit therethrough leading to said reservoir; and

**a spout extending from the neck, said spout comprising a lid** and an outlet, wherein the lid is moveable for providing access to said conduit for filling said reservoir with a fluid, wherein the dispenser is mounted to a surface and wherein the spout is above the surface, the reservoir is below the surface, and the neck penetrates the surface.

D.I. 1-1 at 12 (emphasis added).

Claim 45 recites:

**45.** A fluid dispenser comprising:

a reservoir for storing the fluid to be dispensed;

an outlet for dispensing the fluid there-through;

a pump for pumping the fluid to the outlet;

**a neck extending from the reservoir** defining a conduit in communication with said reservoir, the neck comprising a threaded outer surface;

**a cap threaded to the reservoir and coupling the neck to the reservoir**, and

**a spout extending from the neck comprising a lid** defining a surface of said spout, wherein the lid is moveable for providing access to said conduit, and wherein said reservoir is finable through said conduit.

D.I. 1-1 at 14 (emphasis added).

The specification does not explicitly define the term "spout." *See* D.I. 1-1. However, the specification discusses "a spout extending from the neck, such that the outlet is on the spout." D.I. 1-1 at 8, 2:36-37. With reference to the embodiment in the first two figures of the '157 patent, the specification discloses that "[t]he reservoir body 24 is connected to a spout 28 via a neck 30. When properly installed on a countertop 32, only the spout 28 and possibly an upper portion of the neck extend above an upper surface 34 of the countertop." D.I. 1-1 at 9, 3:50-54.



With reference to Figure 4, the specification also explains how "[a] lid 104 coupled to the spout 28 provides access to the funnel. The lid may be hingedly coupled to the spout or may be completely removable from the spout. In the shown exemplary embodiment, the lid forms an outer surface of the spout." D.I. 1-1 at 10, 6:41-45. The specification refers to the spout and the neck as different structures, where "the spout 28 may be connected or may be integral with the neck 30." D.I. 1-1 at 11, 8:1-2.

### B.    Procedural Background

On March 27, 2025, Plaintiff filed the Complaint against Stern Engineering. The Complaint contains a single count alleging that the Lotus dispenser directly infringes claims 14, 16, 17, 18, and 45 of the '157 patent literally or under the doctrine of equivalents. D.I. 1 ¶¶ 35-43. Plaintiff attached a claim chart and labeled diagram of the Lotus dispenser that purports to demonstrate where each element of claims 14, 16, 17, 18, and 45 of the '157 patent is present in the Lotus dispenser. D.I. 1-3 at 3. The claim chart alleges that the Lotus dispenser contains every limitation of claims 14 and 45 of the '157 patent, including "a spout **20** extending from the neck **30**, said spout comprising a lid," "a neck **30** extending from the reservoir **50**," and "a cap **40** threaded to the reservoir **50** and coupling the neck **30** to the reservoir." D.I. 1-3 at 2-3.



*FIG. 1*

### LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]o state a claim of direct infringement sufficient to withstand a motion to dismiss, a plaintiff must plead facts that plausibly suggest . . . the accused product meets each limitation of the asserted

claim(s)." *Kajeet, Inc. v. Gryphon Online Safety, Inc.*, 2021 WL 780737, at \*3 (D. Del. Mar. 1, 2021). A claim to relief is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court accepts all "well pleaded facts" as true but does not accept legal conclusions. *Id.* at 679.

A court may dismiss an infringement claim under Rule 12(b)(6) where there are no relevant facts in dispute, and it is clear as a matter of law that the defendant cannot infringe. *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141-42 (Fed. Cir. 2018). Dismissal is especially appropriate where the plaintiff has made disavowals during prosecution that preclude success on an infringement claim. *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1161 (Fed. Cir. 2019). There is no need to proceed to discovery when "there is no reasonable view of the facts pled [by the plaintiff] that would support a claim for relief," because the accused infringer clearly lacks a required limitation of the claims at issue. *Cumberland Pharmaceuticals Inc. v. Sagent Agila LLC*, 2013 WL 5913742 at \*2-3 (D. Del. Jan. 23, 2025). Nor would a supposed claim construction dispute preclude dismissal in a case where the claims can be construed without the need to resolve underlying factual disputes, "a decision on claim construction is not different in kind from the interpretation of other legal standards, which is proper and routine in ruling on a motion under Rule 12(b)(6)." *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 993 (Fed. Cir. 2024).

## ARGUMENT

Plaintiff cannot make out a claim for patent infringement where required claim limitations of the '157 patent are missing from the accused product. Patent infringement comprises a two-step analysis: (1) first the court must interpret the claim, then (2) a comparison is made between the properly construed claims and the allegedly infringing device. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*).

The first step—claim interpretation—is an issue of law exclusively within the province of the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). Claim terms are construed to have their ordinary and customary meaning, as would be understood by a person of ordinary skill in the art at the time of the invention, in light of the language of the claims, the specification, and the relevant prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-17 (Fed. Cir. 2005) (*en banc*); *see Hill-Rom Services, Inc. v. Stryker Corporation*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).

"The prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317. Thus, when the patentee "unequivocally and unambiguously" disavows the scope of a claim term in order to overcome prior art rejections, prosecution history disclaimer "narrows the meaning of the claim consistent with the scope of the claim surrendered." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013). "Prosecution disclaimer can arise from both claim amendments and arguments." *Speedtrack, Inc. v. Amazon*, 998 F.3d 1373, 1379 n.7 (Fed. Cir. Jun. 3, 2021) (citing *Tech. Props. Ltd. v. Huawei Techs. Co.*, 849 F.3d 1349, 1357 (Fed. Cir. 2017)); *see Biogen Idec*, 713 F.3d at 1095. "Ultimately, the doctrine of prosecution disclaimer ensures that claims are not 'construed one way in order to obtain their allowance and in a different way against accused infringers.'" *Speedtrack*, 998 F.3d at 1380 n.9 (citations omitted).

The second step involves comparing the properly construed claims to the accused product or process to determine whether the accused product meets each and every limitation of the claim. This all-elements rule mandates "[e]ach element contained in a patent claim is deemed material to

defining the scope of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). And "there can be no infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is not present in the accused device." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003). Therefore, the doctrine of equivalents "must be applied to individual elements of the claim, not to the invention as a whole." *Id.* "It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Id.*

Within these confines, "a patentee may invoke [the] doctrine [of equivalents] to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.'" *Graver Tank & Mfg. Co., Inc., v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) internal citation omitted). Under the insubstantial differences test, the focus is on whether the accused product or process is substantially different from what is patented. *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. at 605, 608-609 (1950). Under the function-way-result test, the focus is on whether the accused product performs "substantially the same function in substantially the same way to obtain the same result." *Graver Tank*, 339 U.S. at 608-609 (1950).

When a patentee "narrows a claim as a condition for obtaining a patent" the patentee "disavows his claim to the broader subject matter, whether the amendment was made to avoid the prior art or to comply with § 112." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. Ltd.*, 535 U.S. 722, 736-37 (2002). "A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the

amended claim. *Id.* at 740. Further, the "patentee should bear the burden of showing that the amendment does not surrender the particular equivalent in question." *Id.*

I.      **THE LOTUS DISPENSER CANNOT INFRINGE CLAIMS 14 AND 45 BECAUSE IT LACKS A "SPOUT COMPRISING A LID."**

In their claim chart, Plaintiff alleges that the Lotus dispenser contains "a spout **20** extending from the neck **30**, said spout comprising a lid." D.I. 1-3 at 3. However, under the plain and ordinary meaning of the word "spout" and the clear and unambiguous disavowals made by Plaintiff during prosecution, the structure identified as a "spout" by the number 20 in Exhibit C cannot be a spout. And so, the identified "spout" cannot comprise a "lid," where the identified "lid" resides on a structure other than the "spout."

First, there is no special definition in the specification of the term "spout," thus the plain and ordinary meaning of the word controls. *Phillips*, 415 F.3d at 1313-17.  The ordinary and customary understanding of the term "spout" connotes a channel that projects outward from some other structure, and through which a liquid can be discharge out of and away from the structure from which the spout projects. Even a ubiquitous nursery rhyme teaches this meaning: "I'm a little teapot, short and stout.  Here is my handle.  Here is my ***spout***."  Consistent with this plain and ordinary meaning, the Merriam-Webster dictionary describes a spout as "a pipe or conductor through which a liquid is discharged or conveyed in a stream: ***such as . . . a projecting tube or lip*** from which a liquid (such as water) issues." "Spout." Merriam-Webster.com Dictionary, Merriam-Webster,  https://www.merriam-webster.com/dictionary/spout.  (last visited Jun. 2, 2025) (emphasis added). Plaintiff uses the word spout consistent with this definition in the claims and specification of the '157 patent; the "spout" disclosed by the embodiments projects outwards from a neck. *See* D.I. 1-1 at 8 (labeling structure 28 of figure 1 as a spout). In contrast, structure 20 on the Lotus dispenser, identified as the "spout" in Plaintiff's Exhibit C diagram does not project

9

outward. *See* D.I. 1-3 at 3 fig. 1. Instead, structure 20 is a body from which one of skill in the art

(or anyone for that matter) would understand that a spout (labelled as 70, an "outlet"[2]) then projects

horizontally *Id.*



Therefore, structure 20 is not a "spout comprising a lid" according to the ordinary and customary

meaning of the claim term "spout." *See Phillips*, 415 F.3d at 1313-17.   Essentially, Bobrick's

unfounded accusation of infringement here would have the plain and ordinary meaning of the term

"spout" read on the entirety of the body of the teapot, so that the "spout comprising a lid" would,

in their altered reality, read on a traditional teapot where the topfill lid is not on – or anywhere in

contact with – the "spout."   This broad reading would be nonsensical even to a kindergartener

versed in a basic nursery rhyme.   It is also contravened by the prosecution history, as explained

below.

### A.    Prosecution Disavowal

Beyond the ordinary and customary meaning of the word "spout," Plaintiff disavowed the

scope of the term during prosecution of the '157 patent when it introduced argument to distinguish

---

[2] Consistent ordinary and customary meaning, and with the use of terms in the specification, the "outlet" on the accused product is the hole formed on the underside of the end of the spout (identified as structure 70 in Exhibit C).  *See* D.I. 1, Ex. A at Col. 4, l. 3 (describing "a spout outlet 27" in Fig 4); see also Col. 6, ll. 19-21 (noting "the soap may be dispensed in discrete amounts through an outlet 27 of the spout to the user's hand.").

its purported invention from prior art cited by the Examiner in a June 4, 2012, Office Action.[3]  In

that Office Action, the Examiner rejected application claims 1, 7-8, 11, 14 and 19 as anticipated

by U.S. Patent No. 7,198,175 to Ophardt ( "Ophardt," Ex. 1) and claims 19-25 as anticipated by

U.S. Patent Application Publication 2005.0155988 to Meehan ( "Meehan," Ex. 2). ("Prosecution

History," Ex. 3) June 4, 2012 Office Action ("OA") at 2-3.[4] Both the Ophardt patent and the

Meehan patent described spouts. The Examiner asserted that the Ophardt patent disclosed and

anticipated every limitation of these claims, including the disclosure of "a spout (38) extending

from the neck comprising a lid (238) and the outlet, wherein the lid is moveable for providing

access to the conduit" with reference to the Ophardt patent's figure 31. Ex. 3 (Jun. 4, 2012 OA)

Prosecution History at 2; Ophardt Patent at 23.

With respect to claims 19-25, the Examiner argued that the Meehan patent disclosed and

anticipated every limitation of these claims, including the disclosure of "a spout (56) extending

from the neck, the spout comprising a lid (53) and an outlet (139)" with reference to the Meehan

patent's figure 4. Ex. 3 (Prosecution History Jun. 4, 2012 OA) at 3; Meehan Patent at 4.

Additionally, Plaintiff argued that "[n]either Meehan et al. nor Ophardt [patents] relied

upon the Examiner in rejecting original claim 1, disclose a lid defining an upper surface of the

spout." *Id.* at 12-13. Because the lid portion of the invention disclosed by the Ophardt patent was

over the upright "neck" area of the faucet, Plaintiff impliedly conceded that only the horizontally

projecting portion of the Ophardt invention was a spout. *See id.*  In its Amendment and Response

to that rejection, Plaintiff explicitly argued that the Examiner's identification of Meehan's structure

_____

[3] The court may rely on the prosecution history to assess disavowals at the motion to dismiss stage.
*See Amgen Inc. v. Coherus Biosciences Inc.*, 2018 WL 1517689, at *2 (D. Del. Mar. 26, 2018),
*aff'd*, 931 F.3d 1154 (Fed. Cir. 2019); *Ottah*, 884 F.3d at 1141-42.

[4] All references to "Ex." refer to the exhibits to the Declaration of Peter J. Cuomo in Support of
Stern Faucet's Motion to Dismiss, filed concurrently with this motion.

56 as a "spout" with a removeable lid was erroneous. *Id.* at 13. Instead, Plaintiff argued that structure 56 was a "collar" or "base" and that structure 53 was the "spout" of the Meehan invention. *Id.*



*Fig. 4*

Because Meehan structure 56 contains a removable lid but structure 53 does not, Plaintiff limited the scope of the term "spout" in its claims (consistent with the customary and ordinary meaning of the term) to exclude a vertical "base" or neck, like structure 53 in the Meehan patent, such that Meehan did not anticipate Plaintiff's claim 19, which required a lid on the spout. *See id.* Thus, Plaintiff's arguments show that Plaintiff understood "spouts" to be structures that project outward from an upright base, and *not* the upright base itself. *See Phillips*, 415 F.3d at 1317.

Similarly, in arguing that Ophardt did not anticipate its invention, Plaintiff stated that the spout identified by the Examiner, Ophardt's structure 38, did not have a lid that defined its upper surface, although Plaintiff conceded that structure 238 was a neck comprising a lid. Ex. 3 (Prosecution History Sept. 4, 2012 Remarks/Arguments) at 13.



Thus, Plaintiff differentiated between the upright "neck" structure with a lid in Ophardt, and the horizontally projecting channel (viz. spout) where liquid was actually dispensed. Here too, Plaintiff disavowed any scope of its claimed "spout" – again consistent with the ordinary and customary meaning of that term – to exclude Ophardt's upright portion (238) as comprising a spout.

With this argument made to overcome the Examiner's rejection, Plaintiff "unequivocally and unambiguously" disavowed the scope of a claim term "spout" in order to overcome prior art rejections, thus "narrow[ing] the meaning of the claim consistent with the scope of the claim surrendered." *Biogen Idec, Inc.*, 713 F.3d at 1095. When applying the ordinary definition of a spout to the Lotus dispenser, it is clear even to laypeople that the upright structure 20 cannot comprise a spout. *See Wyers v. Master Lock Co.*, 616 F.3d 1231, 1239-40 (Fed. Cir. 2010) ("[E]xpert testimony is not required when the references and the invention are easily understandable."). In view of that plain and ordinary meaning and Applicant's disavowal applied to the term "spout,", the Lotus dispenser cannot possible comprise "a spout extending from the neck comprising a lid" as required by claims 14 and 45. D.I. 1-1 at 12, 14; *see Phillips*, 415 F.3d

at 1317. After disavowing the broader definition of the term spout in the prosecution history,

Plaintiff cannot now assert that the Lotus dispenser infringes under the doctrine of equivalents by

attempting to apply a broader definition of spout to recapture what it disclaimed as comprising a

"spout," e.g., an upright base from which a spout projects. *Festo*, 535 U.S at 736-37.

## II.    THE LOTUS DISPENSER CANNOT INFRINGE CLAIMS 14 AND 45 BECAUSE IT LACKS A "NECK EXTENDING FROM THE RESERVOIR."

In their claim chart, Plaintiff alleges that the Lotus dispenser contains "a neck **30** extending

from the reservoir **50**." D.I. 1-3 at 3. However, the diagram in Plaintiff's own Exhibit C shows an

intervening 800-millimeter tube (and other unidentified structures) between the alleged "neck" and

"reservoir." *Id.*



FIG. 1

Here too, there is no special definition in the specification of the term "extend" in the specification,

and so its ordinary and customary meaning controls.  *See* "Extend." Merriam-Webster.com

Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/extend. (last visited

Jun. 2, 2025) (Noting to "extend" means to "spread or stretch forth."). Plaintiff used the term "extending from" consistently with this ordinary and customary meaning throughout the specification and claims of the '157 patent, as every structure it identifies as "extending from" another in the claims and specification are all adjacent, where the one is contiguous other from which it extends. *See, e.g.*, D.I. 1-1 at 8 2:13-14 ("The cap includes a first Surface and a second annular surface extending from the first Surface."); *id.* at 9 4:55-56 (describing contiguous structure with the phrase "the motor coupler includes a tubular portion **86** extending from a base portion **88**"); *id.* at 2:16-20 ("In another exemplary embodiment, the dispenser may also include a neck extending from the reservoir having a threaded outer surface, a groove formed along the neck, a spout extending from the neck such that the outlet is formed on the spout[.]"); *id.* at 2:56-60 ("In yet a further exemplary embodiment, a fluid dispenser is provided having a reservoir, a neck extending from the reservoir defining a conduit there-through leading to the reservoir, a spout extending from the neck[.]"). The "ordinary and customary meaning, as would be understood by a person of ordinary skill in the art at the time of the invention, in light of the language of the claims, the specification, and the relevant prosecution history" thus requires that structures where one component extends from another to be at least adjacent and contiguous. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-17 (Fed. Cir. 2005) (*en banc*). Since the "neck" and "reservoir" identified by Plaintiff on the Lotus dispenser are neither contiguous nor adjacent, the Lotus dispenser lacks "a neck extending from the reservoir" and therefore cannot infringe claims 14 or 45. D.I. 1-1 at 12, 14; *see Autogiro Co. of Am. v. The United States*, 384 F.2d at 403 (Fed. Cir. 1967).



FIG. 1

- The structure labelled as a "**neck**" (identified by the number 30 in Bobrick's Exhibit C) **does not extend from the reservoir** (identified by the number 50).

Nor can Plaintiff now argue that the Lotus dispenser contains a substantially similar element. The 800-millimeter intervening tube in the Lotus dispenser between the "neck" and the "reservoir" represents a "substantial differen[ce]" from the subject matter in the asserted claims. *Graver Tank*, 339 U.S. at 608-609. The same tube also precludes the Lotus dispenser from performing "substantially the same function in substantially the same way to obtain the same result." *Graver Tank*, 339 U.S. at 608-609. The long tube utilizes a different way of providing a conduit to move liquid soap between the reservoir and neck. *See id.* Thus, the Lotus dispenser does not contain an equivalent structure to "a neck extending from the reservoir" and therefore cannot infringe claims 14 or 45. D.I. 1-1 at 12, 14; *see Graver Tank*, 339 U.S. at 608-609; *Autogiro Co. of Am.*, 384 F.2d at 403.

## III. THE LOTUS DISPENSER CANNOT INFRINGE CLAIM 45 BECAUSE IT LACKS "A CAP THREADED TO THE RESERVOIR AND COUPLING THE NECK TO THE RESERVOIR"

In its claim chart, Plaintiff alleges that the Lotus dispenser contains "a cap **40** threaded to the reservoir **50** and coupling the neck **30** to the reservoir." D.I. 1-3 at 3 (below, annotated).



FIG. 1

Although the cap and reservoir may be adjacent, as can be seen above, the diagram in Plaintiff's Exhibit C again shows at least the 800-millimeter "liquid soap tube" (and other structures) intervening between the alleged "cap" and the "neck," such that that the "cap" cannot be "coupling" the "neck" to the "reservoir." *Id.* Here too, there is no lexicography of the term "couple," and so the plain and ordinary meaning controls. *See* "Coupling." Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/coupling. (last visited Jun. 2, 2025) (Describing a "coupling" as a "device that serves to connect the ends of adjacent parts of objects." To "couple" means "to fasten together."). Plaintiff uses the term "coupling" consistently with this customary and ordinary meaning throughout the specification and claims of the '157 patent; every time it identifies a "coupling" of one structure to another in the claims and specification, the structures are all are directly adjacent to one another. *See, e.g.*, D.I. 1-1 at 2:40-42 (describing a set of contiguous structure as "a conduit connector coupled to the neck and releasably connecting

the first conduit to the second conduit") at *id.* at 9 4:51-53 ("The pump assembly also includes a

motor subassembly **78** which includes a motor **80** and a motor coupler **82** coupled to the motor via

a motor shaft **84**."). The "ordinary and customary meaning, as would be understood by a person

of ordinary skill in the art at the time of the invention, in light of the language of the claims, the

specification, and the relevant prosecution history" thus requires that structures "coupled" are at

least adjacent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-17 (Fed. Cir. 2005) (*en banc*). Since

the "neck" identified by Plaintiff on the Lotus dispenser is not adjacent to the "cap" and the

"reservoir," the Lotus dispenser lacks "a cap threaded to the reservoir and coupling the neck to the

reservoir" and therefore cannot infringe claims 14 or 45. D.I. 1-1 at 12, 14; *see Autogiro Co. of*

*Am.*, 384 F.2d at 403.



- The structure identified as a "cap" (by the number 40 in Bobrick's Exhibit C) does not "couple" the structure labelled as "neck" (identified by the number 30 in Bobrick's Exhibit C) to the reservoir ((identified by the number 50 in Bobrick's Exhibit C).

FIG. 1

Nor can Plaintiff argue that the Lotus dispenser contains a substantially similar element

that is equivalent to this limitation. The 800-millimeter intervening tube in the Lotus dispenser

between the "neck" and the "reservoir" represents a "substantial differen[ce]" from the '157 patent.

*Graver Tank*, 339 U.S. at 608-609. The same tube also makes it so that the Lotus dispenser does

not perform "substantially the same function in substantially the same way to obtain the same

result." *Graver Tank*, 339 U.S. at 608-609. The Lotus dispenser's use of a long tube is a different way of moving liquid soap between the reservoir and neck. *See id.* Thus, the Lotus dispenser does not contain an equivalent to "a neck extending from the reservoir" and could not infringe claims 14 or 45, even if an infringement theory under the doctrine of equivalents were available to Plaintiff, which it is not. D.I. 1-1 at 12, 14; *see Graver Tank*, 339 U.S. at 608-609; *Autogiro Co. of Am.*, 384 F.2d at 403.

## IV.    THE LOTUS DISPENSER CANNOT INFRINGE CLAIMS 16-18

Dependent claims contain every limitation of the claims from which they depend. 35 U.S.C. § 112, fourth paragraph. "The law is clear that if an independent claim . . . is not infringed, claims dependent on that independent claim . . . cannot be found to be infringed." *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1300 (Fed. Cir. 2002) (citing *Wahpeton Canvas CO. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989)) (holding that it is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed). Here, each of claims 16-18 depend from independent claim 14.  And where independent claim 14 cannot be infringed as a matter of law, neither can claims 16-18, which depend therefrom.  *Id*.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss this action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated:  June 9, 2025

OF COUNSEL:

Adam P. Samansky
Peter J. Cuomo
Amanda R. Metell
**MINTZ LEVIN COHN FERRIS**
  **GLOVSKY & POPEO PC**
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
apsamansky@mintz.com
pjcuomo@mintz.com
ametell@mintz.com

4911-1790-2924, v. 3

**CHIPMAN BROWN CICERO & COLE, LLP**

 _/s/ Gregory E. Stuhlman_
Joseph B. Cicero (#4388)
Gregory E. Stuhlman (#4765)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
cicero@chipmanbrown.com
stuhlman@chipmanbrown.com

*Attorneys for Defendants Y.Stern Engineering
(1989) Ltd., a/k/a Stern Engineering Ltd.,
a/k/a Stern Engineering 1989, a/k/a Stern
Faucets, and Barantec, Inc.*