# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BOBRICK WASHROOM EQUIPMENT, INC.,

               Plaintiff,

       v.

Y.STERN ENGINEERING (1989) LTD.,
A/K/A STERN ENGINEERING LTD.,
A/K/A STERN ENGINEERING 1989,
A/K/A STERN FAUCETS, an Israeli
Corporation, BARANTEC, INC., a Delaware
Corporation, and DOES 1-9,
               Defendants.

C.A. No. 1:25cv376

**JURY TRIAL DEMANDED**

## DEFENDANT STERN ENGINEERING AND BARANTEC, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

Dated: July 18, 2025

OF COUNSEL:

Adam P. Samansky
Peter J. Cuomo
Amanda R. Metell
**MINTZ LEVIN COHN FERRIS
  GLOVSKY & POPEO PC**
One Financial Center
Boston, Massachusetts 02111
Phone: (617) 542-6000
Fax: (617) 542-2241
apsamansky@mintz.com
pjcuomo@mintz.com
ametell@mintz.com

**CHIPMAN BROWN CICERO & COLE, LLP**
Joseph B. Cicero (#4388)
Gregory E. Stuhlman (#4765)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
cicero@chipmanbrown.com
stuhlman@chipmanbrown.com

*Attorneys for Defendants Y.Stern Engineering
(1989) Ltd., a/k/a Stern Engineering Ltd.,
a/k/a Stern Engineering 1989, a/k/a Stern
Faucets, and Barantec, Inc.*

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    ARGUMENT..............................................................................................................1

      A.     Plaintiff Misunderstands its Requirement to Plead a Legally
             Sufficient Claim ...............................................................................................1

      B.     Plaintiff's Distorted Application of Claim Terms Clashes with
             the Intrinsic Record..........................................................................................2

      C.     The Lotus Dispenser Cannot Infringe the Asserted Claims of the
             '157 Patent ......................................................................................................5

            1.     Plaintiff Attempts to Complicate Plain and Ordinary Meanings
                    of Claim Terms ...................................................................................5

            2.     Plaintiff Improperly Uses a Misleading Comparison of its
                    Patent Figures and the Accused Product.........................................8

      D.     Amending the Complaint Would Not Cure the Deficiencies in
             Plaintiff's Infringement Allegations ...............................................................9

III.    CONCLUSION..........................................................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
  239 F.3d 1343 (Fed. Cir. 2001)................................................................................................ 2

*Bradford Co. v. Conteyor N. Am., Inc.,*
  603 F.3d 1262 (Fed. Cir. 2010).......................................................................................... 7, 8

*Consol. Rail Corp. v. Providence & Worcester Co.,*
  540 F. Supp. 1210 (D. Del. 1982).......................................................................................... 2

*Cumberland Pharmaceuticuals Inc. v. Sagent Agila LLC,*
  No. 12-825-LPS, 2013 U.S. Dist. LEXIS 156834 (D. Del. Nov. 1, 2013)................................... 2

*Donald M. Durkin Contracting, Inc. v. City of Newark,*
  2006 U.S. Dist. LEXIS 68221 (D. Del. Sep. 22, 2006) .............................................................. 2

*In re Power Integrations, Inc.,*
  884 F.3d 1370 (Fed. Cir. 2018)............................................................................................... 7

*Int'l Bus. Machines Corp. v. Zynga Inc.,*
  2024 U.S. Dist. LEXIS 156049 (D. Del. Aug. 29, 2024) ........................................................... 9

*Jang v. Boston Scientific Corp.,*
  872 F.3d 1275 (Fed. Cir. 2017)............................................................................................... 4

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.,*
  10 F. 4th 1330 (Fed. Cir. 2021) ............................................................................................... 8

*Ottah v. Fiat Chrysler,*
  884 F.3d 1135 (Fed. Cir. 2018)............................................................................................... 2

*Parilla v. IAP Worldwide Services, VI, Inc.,*
  368 F.3d 269 (3d Cir. 2004).................................................................................................... 2

*Personalized Media Communications v. Apple Inc.,*
  952 F.3d 1336 (Fed. Cir. 2020)............................................................................................... 4

*Shane v. Fauver,*
  213 F.3d 113 (3d Cir. 2000).................................................................................................... 9

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
  775 F.2d 1107 (Fed. Cir. 1985).................................................................................... 9

*Tf3 Ltd. v. Tre Milano, LLC*,
  894 F.3d 1366 (Fed. Cir. 2018).................................................................................... 7

*Zenith Lab'ys, Inc. v. Bristol-Myers Squibb Co.*,
  19 F.3d 1418 (Fed. Cir. 1994).................................................................................... 9

## **Rules**

Fed. R. Civ. P. 8(a) .................................................................................................... 2

Fed. R. Civ. P. 12(b)(6)............................................................................................... 2

Fed. R. Civ. P. 15(a) .................................................................................................. 9

## I.    INTRODUCTION

The crux of Plaintiff's opposition is that a district court should not question the sufficiency or viability of a patent infringement complaint where a supporting claim chart has been attached, even where that Plaintiff has afforded itself obvious liberties by misapplying claim terms that laypeople (including children) use and understand as a matter of course. Plaintiff asserts that easily understood words such as "spout" and "neck" recited in the context of a soap dispenser are purportedly "not appropriate" for construction at this stage of the proceeding. It asks the Court to suspend common sense and ignore the plain and ordinary meanings that even Plaintiff applied faithfully—and consistently—in its patent specification and during prosecution before bringing its complaint. *See, e.g.*, D.I. 26 ("Opposition") at 11 ("[T]here is no requirement that the recited 'spout' be a single, unitary structure."); *id.* at 17-18 ("[D]efendants appear to assert that the recited 'neck' must be a unitary structure when no such requirement exists."); *id.* at 19 ("Defendants again ignore that the '[800 mm] liquid soap tube' *is part of the neck* in the accused products [despite the presence of multiple intervening structures]") (emphasis added). But there are at least two fundamental flaws with these arguments: (1) the court *can* construe terms at this stage of the proceeding as even Plaintiff concedes; and (2) Plaintiff fails to allege that there was any lexicography or special meanings assigned to the claim terms now being contested, which are all easily understood and present no barriers towards resolving Defendants' motion. Under the correct legal analysis, and taking the facts as pleaded in the complaint, including the claim charts attached thereto, as true, Plaintiff fails to state a claim of infringement upon which relief may be granted.

## II.    ARGUMENT

### A.    Plaintiff Misunderstands its Requirement to Plead a Legally Sufficient Claim

Plaintiff confuses factual and legal sufficiency in its recitation of the legal standard. No one disputes that the Complaint contains "a short and plain statement of the claim." Fed. R. Civ.

P. 8(a). Indeed, the Complaint includes "detailed mapping of the features of the asserted claims and [Plaintiff]'s description as to how the Accused Products embody each." Opposition at 7-8. However, the amount of factual matter in the Complaint alone cannot cure its legal deficiencies. Accepting these diagrams and the allegations in the Complaint as the factual basis for Plaintiff's infringement claims to which Plaintiff is bound as an admission,[1] Plaintiff fails to "state a claim upon which relief can be granted" because "there is no reasonable view of the facts pled [by the plaintiff] that would support a claim for relief," Fed. R. Civ. P. 12(b)(6); *Cumberland Pharmaceuticuals Inc. v. Sagent Agila LLC*, 2013 U.S. Dist. LEXIS 156834, at *2-3 (D. Del. Nov. 1, 2013). Courts can dismiss an infringement claim under Rule 12(b)(6) in cases such as this where there are no relevant facts in dispute and it is clear as a matter of law that the defendant cannot infringe. *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141-42 (Fed. Cir. 2018).

**B. Plaintiff's Distorted Application of Claim Terms Clashes with the Intrinsic Record**

It is black letter law that patent claim terms must be interpreted and given the same meaning for both validity and infringement analyses. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). In the patent specification, Plaintiff uses the terms "spout" and "neck" consistent with its ordinary meaning that most people who use a sink or shower can recognize and understand. *See, e.g.*, D.I. 1-1 at 8, 1:19-21 ("The pump pumps the liquid soap to a spout of the dispenser which dispenses the soap."); *id.* at 8, 2:20-21 ("[A] spout extending from

---

[1] "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Donald M. Durkin Contracting, Inc. v. City of Newark*, No. 04-163 GMS, 2006 U.S. Dist. LEXIS 68221, at *17-18 (D. Del. Sep. 22, 2006) (internal quotations omitted). Facts that have been judicially admitted are binding to the parties. *See, e.g.*, *Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (internal citations omitted); *see also Consol. Rail Corp. v. Providence & Worcester Co.*, 540 F. Supp. 1210, 1220 n.12 (D. Del. 1982) (finding that an admission in a pleading is a judicial admission, which is binding on the litigant).

the neck such that the outlet is formed on the spout."); *id.* at 9, 3:50-51 ("The reservoir body 12 is connected to a spout 28 via a neck 30."). During prosecution, the patentee acquiesced to the examiner's identification of the prior art reference Ophardt's "spout," which matches the well-known meaning of this term that Defendants identified in the initial motion. *See* D.I. 18-1 at 13, 17; Ex. 1 at 16 (Fig. 22 and feature 38). Plaintiff also argued against a broader interpretation of the spout term with regard to the Meehan reference, which Plaintiff identified as component 53, while the examiner's spout would have included a component 56 that Meehan described as a base. *See* D.I. 18-1 at 16; Ex. 2 at 81 ¶[0054].

Plaintiff attempts to qualify its Meehan arguments by suggesting that only Figure 1 was being discussed. Opposition at 14, n.4. Meehan, however, identifies Figures 1-4 ***as the same embodiment*** and Plaintiff itself referred to Figure 3, not Figure 1, during prosecution. *See* D.I. 18-1, Ex. 3 at 13 ("Item 56, alleged to be a spout by the Examiner, appears to be a collar which is referred to as a base (***see Paragraph 0054*** of Meehan et al.)."); D.I. 18-1, Ex. 2 at 2 ¶[0014] ("FIG. 4 is a first, side cross-sectional view of the FIG. 1 dispenser…")); *id.* at 4 ¶[0054] ("As mentioned before, the fluid dispenser assembly 51 allows the container 59 to be refilled from the top of the sink or countertop, ***as is depicted in FIG. 3***.") (emphases added). And structures 53 and 56 point to the same parts, whichever of Figures 1-4 is being viewed. But regardless of which figure best depicts structure 53, Plaintiff's assertion that "[n]either Meehan et al. nor Ophardt . . . disclose a lid defining an upper surface of the spout" means that it cannot now interpret "spout" to include the entire dispenser structure and all of its components as it attempts with the accused products.

3



Fig. 4



FIG. 22

Moreover, even assuming *arguendo*, that these comments do not give rise to a disclaimer, they still provide persuasive evidence that informs the meaning of the term "spout," in a manner that is entirely consistent with its plain and ordinary meaning. *See Personalized Media Communications v. Apple Inc.*, 952 F.3d 1336, 1345-46 (Fed. Cir. 2020) (reversing the Board for requiring the prosecution history evidence to rise to the level of a disclaimer in order to inform the meaning of a disputed claim term).

After raising no objection to the Examiner using the term "spout" in its ordinary and customary way with regard to Ophardt before arguing that "[n]either Meehan et al. nor Ophardt … disclose a lid defining an upper surface of the spout," Plaintiff applied an ordinary meaning and cannot now seek an unnaturally broad construction to support its infringement charges against Defendants. Ex. 3 at 12-13. This is particularly so where Plaintiff identifies no lexicography in support. And Plaintiff's suggestion that it can still rely on the doctrine of equivalents would run afoul of this intrinsic record, and would impermissibly ensnare the prior art. *See Jang v. Boston Scientific Corp.*, 872 F.3d 1275 (Fed. Cir. 2017) (affirming non-infringement and holding that

patentee failed to meet its burden of proving that the proposed doctrine of equivalents theory did

not ensnare the prior art).

        **C.**        **The Lotus Dispenser Cannot Infringe the Asserted Claims of the '157 Patent**

        **1.**        **Plaintiff Attempts to Complicate Plain and Ordinary Meanings of Claim Terms**

Plaintiff does its best to cast doubt on terms that are so simple even children understand

their ordinary and customary meaning. First, the puffed-up protestations over the little teapot

nursery rhyme miss the mark. *See* Opposition at 10 n.2. Defendants do not "define" a teapot by its

handle, lid and spout, just as a human body is not defined by its head, shoulders, knees and toes;

or its eyes, ears, mouth and nose. But any layperson (or person skilled in the art) with a most basic

understanding of the English language knows what those terms mean and can readily identify the

structures identified by them. Thus, the "I'm a little tea pot" nursery rhyme is not offered or relied

upon as "evidence" but is cited to demonstrate that even young children know the ordinary

meaning of a simple term like "spout." Just as toddlers can be taught which parts of the body are

the "head, shoulders, knees and toes," they can understand that the spout of a teapot projects

outwardly from the vertical body of the pot. Plaintiff understood this plain meaning too, as it used

the term spout consistent with this plain and ordinary meaning in the claims and specification of

the '157 patent, *see* D.I. 1-1 at 9 1:50-54 (labeling structure 28 of figure 1 as a spout), and in

prosecution to distinguish its purported invention (a soap dispenser with its body below the surface

of the countertop, with a spout comprising a lid above the countertop. *See id.* at 12 at claim 14

(requiring "wherein the dispenser is mounted to a surface and ***wherein the spout is above the***

***surface***, the reservoir is below the surface, and the neck penetrates the surface." (emphasis added));

*see also generally* D.I. 1-3; D.I. 18-1, Ex. 3.

The Lotus Dispenser lacks "a neck extending from the reservoir" because there is an intervening 800-millimeter liquid soap tube (and other structures not identified by number in Plaintiff's claim chart) between the alleged "neck" and "reservoir" identified by Plaintiff in its Complaint. D.I. 1-3 at 1. In its response, Plaintiff resorts to an entirely new argument that the liquid soap tube is part of the neck. Opposition at 17. This unsupported broad definition conflicts with not only the plain and ordinary meaning, but also Plaintiff's own diagram from the claim chart in its Compliant and the entirety of the specification of the '157 patent. In its chart, Plaintiff identified a "neck **30** comprising a threaded outer surface **90**." D.I. 1-3 at 2. The labelled diagram shows features 30 and 90 have a threaded outer surface (shown in darker grey) so that the liquid soap tube can be attached, presumably by a threaded *inner* surface, to the neck. *See* D.I. 1-3 at 3. Plaintiff cannot now contradict its own allegations in its own complaint to claim that the liquid soap tube is "a part of the neck."



Ultimately, Plaintiff is also wrong that it can now construe a "cap…***coupling*** the neck to the reservoir" in a way that includes indirect attachments despite only disclosing direct ones in the

'157 patent specification. Opposition at 19. It is fundamental that patent claims cannot be construed in a manner divorced from the specification's disclosure and teachings. The Federal Circuit directly addressed this issue and a similar term, "coupled," when it reversed a Board construction that was "unreasonably broad and improperly omitted any consideration of the disclosure in the specification." *See In re Power Integrations, Inc.,* 884 F.3d 1370, 1375-76 (Fed. Cir. 2018). In *Power Integrations*, the Federal Circuit held that "[u]nder the board's overly expansive view of the term 'coupled,' every element anywhere in the same circuit is potentially 'coupled' to every other element in that circuit, no matter how far apart they are, how many intervening components are between them, or whether they are connected in series or in parallel." *Id.* at 1376. The panel went on to note that "[e]ven more fundamentally, the board's unduly broad reading of the language of claim 1 is unsupported by the specification," and that "every embodiment" depicted direct connections. *Id.* at 1376-77. Here, Plaintiff's opposition does not dispute that the patent "uses the term 'coupling' consistently with this customary and ordinary meaning throughout the specification and claims of the '157 patent; every time it identifies a 'coupling' of one structure to another in the claims and specification, the structures are all are directly adjacent to one another." D.I. 18 at 17-18; *cf.* Opposition at 17-19. Thus, *Power Integrations* is directly on point and controls. *See also Tf3 Ltd. v. Tre Milano, LLC,* 894 F.3d 1366, 1371-73 (Fed. Cir. 2018) (holding that claims cannot be reasonably construed to include devices or methods that are not described).

Plaintiff's reliance on dicta from *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1270 (Fed. Cir. 2010) is misplaced. The Eastern District of Virginia's comments carry no weight, especially since *Bradford* was decided based on its specific and clearly distinguishable facts. *Id.* In *Bradford*, unlike here, the patentee disclosed indirect couplings. *See id.* at 1271 ("[T]he '096

7

patent specification clearly discloses dunnage coupled to the side structure through a rail….In light of such clear disclosure in the patent, the term 'coupled to' is entitled to a broader scope than the district court allowed."). The Federal Circuit also noted in that case that "the doctrine of claim differentiation supports a reading that allows an indirect coupling of the dunnage to the frame of the container." *Id.* Thus, to the extent that it is relevant at all, comparison of the facts here with those in *Bradford* only highlights the '157 patent specification's shortcomings and Plaintiff's lack of factual and legal support in advancing an unsupportably broad construction that is ***inconsistent*** with its own specification. *Cf., Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F. 4th 1330, 1337 (Fed. Cir. 2021) ("[T]he written description must lead a person of ordinary skill in the art to understand that the inventors possessed the entire scope of the claimed invention.").

### 2.    Plaintiff Improperly Uses a Misleading Comparison of its Patent Figures and the Accused Product

Plaintiff includes misleading figures that purport to demonstrate that its "spout" as shown in Figures 1 and 4 of the '157 patent contain vertical components. Yet, in identifying the "vertical component" of the spout, the arrows point to horizontal structures. Opposition at 16. Troublingly, Plaintiff crops both figures from the '157 patent in a manner hiding that the illustrated spout actually projects horizontally outward from a vertical neck. *Id.* The full figures reveal an inconvenient truth for Plaintiff: that the specification uses the term spout consistent with the ordinary and customary meaning of projecting outward from some other vertical structure. D.I. 1-1 at 4, 7. Additionally, confusing crossing arrows on its image labels do not hide the fact that Plaintiff's argument warps the plain meaning of "spout." *See* Opposition at 16.

Plaintiff's juxtapositions of embodiments and the accused product further fail at muddying the deficiencies of the infringement claims. Plaintiff resorts to a "cursory comparison of the embodiment of the spout [28] in Figure 4 of the '157 Patent with the spout of Defendants' Accused

Products" to provide evidence of infringement. Opposition at 9. But it is black letter law: "that infringement cannot determined [sic] by comparing an accused product 'with a preferred embodiment described in the specification.'" *Int'l Bus. Machines Corp. v. Zynga Inc.*, 2024 U.S. Dist. LEXIS 156049, at *6 (D. Del. Aug. 29, 2024) (quoting *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985)). The "only proper comparison" for purposes of infringement "is with the claims of the patent." *Zenith Lab'ys, Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994). Thus, Plaintiff's side-by-side comparisons of specification figures and the diagram of the accused product demonstrates, at bottom, that Plaintiff's infringement claim cannot survive even the most basic and fundamental scrutiny. *See* Opposition at 9, 16.

> **D.    Amending the Complaint Would Not Cure the Deficiencies in Plaintiff's Infringement Allegations**

Allowing Plaintiff to amend pursuant to Federal Rule of Civil Procedure 15(a) would be futile. Leave to amend need not be granted where "the amendment would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Here, Plaintiff cannot cure the deficiencies because an amendment cannot change the patent specification, the intrinsic record, or the customary meanings of the key claim terms.

## III.    CONCLUSION

For the foregoing reasons, Stern Engineering respectfully requests that the Court grant its Motion to Dismiss.

Dated: July 18, 2025

**CHIPMAN BROWN CICERO & COLE, LLP**

/s/ *Gregory E. Stuhlman*

Joseph B. Cicero (#4388)

OF COUNSEL:

Gregory E. Stuhlman (#4765)

Hercules Plaza

Adam P. Samansky

1313 North Market Street, Suite 5400

Peter J. Cuomo

Wilmington, Delaware 19801

Amanda R. Metell

(302) 295-0191

**MINTZ LEVIN COHN FERRIS**

cicero@chipmanbrown.com

**GLOVSKY & POPEO PC**

stuhlman@chipmanbrown.com

One Financial Center

Boston, Massachusetts 02111

*Attorneys for Defendants Y.Stern Engineering*

Phone: (617) 542-6000

*(1989) Ltd., a/k/a Stern Engineering Ltd.,*

Fax: (617) 542-2241

*a/k/a Stern Engineering 1989, a/k/a Stern*

apsamansky@mintz.com

*Faucets, and Barantec, Inc.*

pjcuomo@mintz.com

ametell@mintz.com

10