## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOBRICK WASHROOM EQUIPMENT, INC., <br> Plaintiff, <br><br> v. <br><br> Y. STERN ENGINEERING (1989) LTD., A/K/A STERN ENGINEERING LTD., A/K/A STERN ENGINEERING 1989, A/K/A STERN FAUCENTS, an Israeli Corporation, BARANTEC, INC., a Delaware Corporation, and DOES 1–9, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 25-376-JLH-LDH <br> ) <br> ) <br> ) FILED <br> ) <br> ) <br> ) FEB – 4 2026 <br> ) <br> ) <br> ) U.S. DISTRICT COURT DISTRICT OF DELAWARE |

### REPORT AND RECOMMENDATION

The following motions are pending before the Court:  Y. Stern Engineering (1989) Ltd.'s ("Stern") Motion to Dismiss for Lack of Jurisdiction over the Person (D.I. 13); Defendants' Motion to Dismiss the Complaint for Failure to State a Claim (D.I. 17); and Plaintiff's Motion for Leave to File a Sur-Reply, or in the Alternative, Motion to Strike (D.I. 32).  The Motions have been fully briefed.  (D.I. 14, 18, 24, 26, 28, 30, 34, 35).  Plaintiff Bobrick Washroom Equipment, Inc. ("Plaintiff" or "Bobrick") alleges that Defendants Stern, and its aliases, and Barantec Inc. ("Barantec") (collectively, "Defendants") have infringed its U.S. Patent No. 8,579,157 (the "'157 patent" or the "Asserted Patent").  For the following reasons, I recommend that Defendants' Motion to Dismiss for Lack of Jurisdiction be GRANTED and Defendants' Motion to Dismiss for Failure to State a Claim be DENIED.  Plaintiff's Motion for Leave to File a Sur-Reply is GRANTED, and I considered the sur-reply (D.I. 32-1, Ex. A) in arriving at my recommendations herein.

## I.    BACKGROUND

The Asserted Patent, titled "Automated Fluid Dispenser," is directed to a fluid soap dispenser. (D.I. 1 ¶¶ 25–27). The '157 patent includes 47 claims, including independent claims 14 and 45, and dependent claims 16, 17, and 18 which depend on claim 14. Claim 14 of the '157 patent recites:

> 14. A fluid dispenser comprising;
>
> a reservoir;
>
> a neck extending from the reservoir defining a conduit there-through leading to said reservoir; and
>
> a spout extending from the neck, said spout comprising a lid and an outlet, wherein the lid is moveable for providing access to said conduit for filing said reservoir with a fluid, wherein the dispenser is mounted to a surface and wherein the spout is above the surface, the reservoir is below the surface, and the neck penetrates the surface.

Claim 45 of the '157 patent recites:

> 45. A fluid dispenser comprising:
>
> a reservoir for storing the fluid to be dispensed;
>
> an outlet for dispensing the fluid there-through;
>
> a pump for pumping the fluid to the outlet;
>
> a neck extending from the reservoir defining a conduit in communication with said reservoir, the neck comprising a threaded outer surface;
>
> a cap threaded to the reservoir and coupling the neck to the reservoir; and
>
> a spout extending from the neck comprising a lid defining a surface of said spout, wherein the lid is movable for providing access to said conduit, and wherein said reservoir is fillable through said conduit.

(D.I. 1, Ex. A at 10:14–23; 14:4–15).

2

Plaintiff alleges that Defendants make fluid dispensers, marketed as the Lotus Soap Dispenser series, that infringe the '157 patent, including at least claims 14, 16, 17, 18, and 45. Plaintiff's Complaint includes a claim chart mapping the elements of the asserted claims to Defendants' Lotus Soap Dispenser. (D.I. 1, Ex. C).

Plaintiff's Complaint alleges that the Court "has personal jurisdiction over Defendants because, on information and belief, they have conducted and continue to conduct substantial business in Delaware." (D.I. 1 ¶ 7). Plaintiff also alleges that "Defendants offer a number of products for sale in Delaware," (*Id.* ¶ 8) and that "Defendants purposefully availed themselves of the privilege of conducting business within this District . . . ." (*Id.* ¶ 20).

Bobrick is a California corporation that designs washroom accessories and toilet partitions. (*Id.* ¶ 1). Stern is an Israeli corporation that is incorporated in and headquartered in Israel, and it shares a common owner with Barantec. (*Id.* ¶ 4). Barantec is incorporated in Delaware with its principal place of business in New Jersey. (*Id.* ¶¶ 3, 22). Stern sells the Accused Products in the United States through Barantec, but Stern itself offers YouTube videos promoting the Accused Products, provides warranties for customers in the United States who buy the Accused Products, provides an email address for customers located in the United States, and has at least one sales representative located in the United States. (*Id.* ¶¶ 4, 13–16, 18, 19).

## II.    DISCUSSION

Stern filed a motion to dismiss for lack of personal jurisdiction. Defendants collectively filed a motion to dismiss failure to state a claim upon which relief can be granted. Plaintiff has also filed a motion for leave to file a sur-reply brief to address what it says are new arguments by Stern under Rule 4(k)(2). I first turn to whether this Court may exercise personal jurisdiction over Stern.

### a. Whether Jurisdiction Exists Over Stern

Plaintiff's main argument in support of this Court's exercise of personal jurisdiction over Stern is based on Federal Rule of Civil Procedure 4(k)(2). (D.I. 24 at 6). To establish jurisdiction under Rule 4(k)(2), a plaintiff's claim must arise under federal law, the foreign defendant must not be subject to the jurisdiction of any state's courts of general jurisdiction, and exercising jurisdiction must comport with due process under the Fifth Amendment. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1411–12 (Fed. Cir. 2009). The defendant must provide an alternative court that would have had jurisdiction over it when the case was filed to avoid being subject to suit if Rule 4(k)(2) is otherwise satisfied. *In re Stingray IP Sols., LLC*, 56 F.4th 1379, 1384–85 (Fed. Cir. 2023). Here, Plaintiff's patent infringement claims clearly arise under federal law, so the Court begins its analysis with the second prong: whether Stern provided an alternative court that would have had jurisdiction over it when this case was filed.

Stern argues that Rule 4(k)(2) does not support this Court's exercise of personal jurisdiction over it because the inquiry fails at the second prong. (D.I. 14 at 12–13). Specifically, in its opening brief, Stern claims that because Plaintiff has "pleaded allegedly infringing conduct in New York, Rule 4(k)(2) is inapplicable here in Delaware." (*Id.* at 13). But the focus of the Court's inquiry is not what Plaintiff pleads; instead, *Touchcom* requires Stern to affirmatively identify a place of suitable jurisdiction. 574 F.3d at 1411–12. In its answering brief, Plaintiff highlights Stern's apparent misunderstanding of the law, noting that instead of affirmatively identifying New York, Stern simply says that Plaintiff's averments show that jurisdiction would be proper in New York. (D.I. 24 at 8). In its reply, Stern corrects its apparent misunderstanding of the law, and affirmatively identifies New York as an appropriate forum: "Stern Engineering concedes that it would have been subject to specific jurisdiction in New York"; "Stern Engineering has not refused

4

to identify a suitable form [sic]: New York" (*Id.*); and "having designated a suitable forum in which plaintiff could have brought suit (New York) . . . ."[1]  (D.I. 28 at 3–4).

        Plaintiff next argues that even though Stern has identified New York as a suitable forum, Stern's identification amounts to the unilateral consent to jurisdiction for purposes of evading Rule 4(k)(2) that the Federal Circuit held impermissible in *Stingray*.  (D.I. 32-1 at 3).  In *Stingray*, the Federal Circuit ruled that a defendant cannot simply use a "unilateral statement of consent" to consent to a jurisdiction of its choosing in order to preclude Rule 4(k)(2).  56 F.4th at 1385.  Rather, the Federal Circuit held that the defendant's burden requires that it "identify a forum where plaintiff could have brought suit—a forum where jurisdiction would have been proper at the time of filing, regardless of consent." *Id.*  That is what Stern has done.  As alleged in the Complaint, "Stern attends and offers its products, including the Accused Products, at trade shows in the U.S., including recently at the 2024 Boutique Design New York (BDNY), a trade show for boutique design and where hotel designers and architects connect with suppliers." (D.I. 1 ¶ 17).  Stern does not dispute these facts.  In its answering brief, Plaintiff further argued that Stern has been attending the BDNY trade show since at least 2018, that it advertises its products at the BDNY trade show, and that it has won awards there at least twice.  (D.I. 24 at 11).  Stern does not dispute Plaintiff's characterizations here, either.  This is not a situation where Stern has selected randomly a forum with which it has no contacts, as contemplated by *Stingray*.  Here, there is a basis for jurisdiction in New York separate and apart from Stern's consent to it.

---

[1]      Thereafter, Plaintiff moved for leave to file a sur-reply, or in the alternative to strike certain portions of Stern's reply brief, arguing that Stern improperly waited until the reply brief to identify New York as a suitable forum, depriving Plaintiff of the opportunity to respond. (D.I. 32; D.I. 32-1, Ex. A).  As laid out above, Stern's conduct is more suggestive of an active misunderstanding of the law rather than a choice to save an argument for its reply.  Nevertheless, to ameliorate any potential unfairness, Plaintiff's motion for leave to file a sur-reply is granted.

Having found that Stern has defeated Rule 4(k)(2) by identifying New York as a suitable forum, I do not reach the third prong under Rule 4(k)(2).

Alternatively, Plaintiff argues that this Court can exercise personal jurisdiction over Stern "under the Delaware long-arm statute, which provides jurisdiction over a principal based upon the forum contacts of its agent." (D.I. 24 at 14). Under this argument, Stern would be considered present in Delaware due to Barantec's status as a Delaware corporation.

Delaware law provides two theories under which a court may establish jurisdiction of one company based on jurisdiction of another: agency theory or alter ego theory. *Adtile Techs. Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 522 (D. Del. 2016) (citing *Lucas v. Gulf & W. Indus., Inc.*, 666 F.2d 800, 806 (3d Cir. 1981) , *overruled on other grounds by EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046 (3rd Cir. 1993)). Plaintiff argues agency theory.

Under the agency theory, the Court "may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction." *Cephalon, Inc. v. Watson Pharms., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) (internal quotation omitted). Under this theory, the Court "does not treat the parent and subsidiary as one entity, but rather attributes specific acts to the parent because of the parent's authorization of those acts." *Int'l Bus. Machs. Corp. v. Rakuten, Inc.*, No. 21-461-GBW, 2022 WL 17848779, at *5 n.4 (D. Del. Dec. 22, 2022). The agency theory does not require evidence of "total domination" by the parent company and is not based on alter ego principals. *Brit. Telecomms. PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del. 2019). Finally, "[t]he agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' [that] operate in concert with each other." *Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 679 (D. Del. 2014) (citing *Cephalon*, 629 F. Supp. 2d at 348). The Court considers several

6

factors when deciding whether an agency relationship is present, including: "the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business." *Bosch*, 60 F. Supp. 3d at 679 (internal quotations omitted). The Court's analysis is not limited to these factors; rather, the factors are intended to reveal whether the two entities are "two arms of the same business group, operating in concert with each other." *Cephalon*, 629 F. Supp. 2d at 348 (internal quotations omitted).

The biggest problem for Plaintiff here is the agency theory of personal jurisdiction is not facially or fairly pled in the Complaint. (*See* D.I. 1). The Complaint never once mentions the term "agent" in the context of this theory of liability, and it contains virtually zero allegations[2] regarding the extent of overlap between officers and directors, the methods of financing, the division of day-to-day responsibility, and the process by which each entity obtains its business. The closest that Plaintiff comes is a single allegation: "On information and belief, Stern and Barantec are related companies and share a common majority owner." That's it. And that is not enough. Through its papers, Plaintiff attempts to include additional facts that it says support a finding of agency liability. (D.I. 24 at 15–16). But, a party may not amend a pleading through arguments made in a brief in opposition to a motion to dismiss. *Arunachalam v. Int'l Bus. Machs. Corp.*, No. 20-1020-

---

[2]      Plaintiff alleges that Stern "conducts substantial business" and "offer numerous products for sale in Delaware[.]" (D.I. 1 ¶¶ 7, 8). This is not enough for me to exercise personal jurisdiction as to Stern. As Stern notes in its briefing, this essentially amounts to a "conducting business" theory which both this Court and the Supreme Court have determined is much too broad to exercise personal jurisdiction with a state long-arm statute. (D.I. 14 at 10); *E.I. du Pont de Nemours and Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 668 n.10 (D. Del. 2018) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 134–35 (2014) (the Supreme Court rejected the argument that "general personal jurisdiction is established under a 'doing business' theory" as this outcome subjected foreign corporations to general jurisdiction any time they had an in-state agent).

LPS, 2021 WL 7209362, at *10 (D. Del. Dec. 29, 2021); *see also M2M Sols. LLC v. Telit Commc'ns PLC*, No. 14-1103-RGA, 2015 WL 4640400, at *3 (D. Del. Aug. 5, 2015) (declining to consider factual allegations regarding a parent corporation's control over its subsidiary, where such allegations were not included in the complaint); *see also Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, 2021 WL 6200907, No. 21-3500, at *20 n.168 (E.D. Pa. Dec. 19, 2021).

However, even if the Court *were* to consider Plaintiff's agency argument, the outcome would be the same. Plaintiff's newly included information in its briefing simply makes clear what is already known: Stern and Barantec are related and have some relationship. (D.I. 24 at 15–16); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F.Supp 1458, 1465 (D. Del. 1994) ("Delaware courts [are not permitted] to exercise personal jurisdiction over a nonresident principal based on the mere existence of a limited agency relationship with a Delaware corporation as agent."). In the end, courts are instructed to consider a combination of factors in determining whether an agency relationship exists. Here, Plaintiff's pleading and associated evidence do not well address most or all of those factors. (D.I. 24 at 15–16). Plaintiff has not come close to meeting their burden of demonstrating the possible existence of an agency relationship between Stern and Barantec to justify exercising personal jurisdiction over Stern.

###### b.  Whether Jurisdictional Discovery Is Warranted

Plaintiff requests that, if the Court finds the evidence cited is insufficient to support a finding of personal jurisdiction over Stern, the Court should nevertheless grant Plaintiffs leave to conduct limited jurisdictional discovery. (D.I. 24 at 18–19). The Third Circuit has stated that "[i]f a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' . . . the plaintiff's right

to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citation omitted).[3]

For the reasons explained above, the Court has determined that Plaintiff has not made out a *prima facie* showing—that is, they have not established with "reasonable particularity" the existence of any agency relationship justifying the exercise of jurisdiction over Stern. And the Court has explained why—pursuant to the applicable law of the Third Circuit—if a party fails to make out a *prima facie* showing of personal jurisdiction, then the party is not entitled to take jurisdictional discovery. *See 3G Licensing, S.A. v. Lenovo Grp. Ltd.*, No. 17-84-LPS, 2019 WL 3974539, at \*8–9 (D. Del. Aug. 22, 2019) (citing cases), *report and recommendation adopted*, 2019 WL 7635823 (D. Del. Sept. 19, 2019); *see also Zausner Foods Corp. v. ECB USA, Inc.*, No. 17-84-LPS, 2022 WL 609110, at \*11 n.16 (D. Del. Jan. 31, 2022), *report and recommendation adopted*, 2022 WL 884235 (D. Del. Mar. 25, 2022). Put differently, the relevant law does not allow a scenario where a party fails to make out a *prima facie* showing of personal jurisdiction, to make a sufficient showing warranting jurisdictional discovery. *Cf. Ctr. for Gestalt Dev., Inc. v. Bowman*, No. 22-02058-JDW, 2022 WL 11398356, at \*4 (E.D. Pa. Oct. 19, 2022); *Schrotberger v. Doe*, 21-0364-JMY, 2022 WL 4072962, at \*7 (E.D. Pa. Sept. 1, 2022); *Vinco Ventures, Inc. v. Milam Knecht & Warner, LLP*, No. 20-6577, 2021 WL 4399682, at \*8 (E.D. Pa. Sept. 27, 2021).

### c.    Defendants' 12(b)(6) Motion to Dismiss for Failure to State a Claim

Defendants moved to dismiss Plaintiff's Complaint for failing to adequately plead a factual or legal basis for infringement under 35 U.S.C. § 271. Because Plaintiff's Complaint provided

---

[3]    *See Bosch*, 70 F. Supp 665 at 680–81 (applying Federal Circuit law to Rule 4(k)(2) analysis, but Third Circuit law to the exercise of jurisdictional discovery).

adequate notice of the alleged infringement, Defendants have not shown that the Complaint should be dismissed under Rule 12(b)(6).

Federal Rule of Civil Procedure 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Federal Circuit reviews procedural issues, including Rule 12(b)(6) motions, according to regional circuit law. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 (Fed. Cir. 2018). In the Third Circuit, courts conduct a two-part analysis for Rule 12(b)(6) motions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, "accept[ing] all of the complaint's well-pleaded facts as true, but . . . disregard[ing] any legal conclusions." *Id.* at 210–11. Second, the court determines whether the alleged facts sufficiently show a "plausible claim for relief." *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Assessing plausibility, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without

converting the motion to dismiss into one for summary judgment." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up).

"A plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). The complaint need only "place the alleged infringer on notice of what activity is being accused of infringement." *Id.* (cleaned up). "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* at 1353. "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.*

Broadly speaking, Defendants argue that I should grant their motion to dismiss because they say it is impossible for them to infringe the '157 patent. (D.I. 18 at 6, 11). Defendants rely on *Ottah v. Fiat Chrysler*, 884 F.3d 1135 (Fed. Cir. 2018) for this argument. The Federal Circuit in *Ottah* upheld dismissal on the basis of non-infringement where the patent covered a book holder and the accused product was a camera holder. *Id.* at 1141. In affirming, the Federal Circuit noted that the district court had determined that the claim at issue was "for a book holder and does not claim a camera holder or any of a camera's components or functions." *Id.* at 1141. That is not the case here. Both the '157 Patent and the Accused Product deal with liquid soap dispensers and Plaintiff has alleged that the Lotus dispenser infringes because it contains a "spout comprising a lid," a "neck extending from the reservoir," and a "cap threaded to the reservoir and coupling the neck to the reservoir." (D.I. 1-1, Ex. A at cl. 14). *Ottah* does not carry the day for Defendants.

11

Next, Defendants assert that Plaintiff's Complaint fails to plead a claim for infringement, arguing that claim limitations of the '157 patent are missing from the Accused Products. Defendants identify three deficiencies, each of which is addressed in turn:

(1) While claims 14 and 45 of the '157 patent recite a spout "comprising a lid," the "spout of the Lotus dispenser does not comprise a lid" (D.I. 18 at 2);

(2) While claims 14 and 45 of the '157 patent recite a "neck extending from the reservoir," the neck, if there is one, of the Lotus dispenser does not extend from the reservoir "because it is neither contiguous with nor adjacent to the neck" because there is a liquid soap tube intervening between the "reservoir" and "neck" of the Lotus dispenser (*Id.*); and

(3) While claim 45 of the '157 patent includes a "cap threated to the reservoir and coupling the neck to the reservoir," if there is a cap in the Lotus dispenser it does not "couple" to the "reservoir" because the two are not contiguous nor adjacent because of the intervening liquid soap tube. (*Id.*).

A complaint pleads direct patent infringement when it puts the defendant "on notice of what activity . . . is being accused of infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)). There is no requirement that the plaintiff "plead facts establishing that each element of an asserted claim is met." *Nalco*, 883 F.3d at 1350 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012)). "The Federal Circuit has further directed that, at this stage of the litigation, the plaintiff is 'entitled to all inferences in its favor on its theory [of infringement].' And district courts have been cautioned against resolving claim construction disputes at this stage." *Bos. Fog, LLC v. Ryobi Techs., Inc.*,

No. 19-2310-LPS-JLH, 2020 WL 1532372, at *2 (D. Del. Mar. 31, 2020), *report and recommendation adopted*, 2020 WL 8079820 (D. Del. June 12, 2020) (quoting *Nalco*, 883 F.3d at 1350).

Defendants argue that the Lotus dispenser cannot infringe the '157 patent because the thing Plaintiff identifies as a "spout" in Exhibit C to the Complaint, the claim chart, is not a spout; thus, Defendants argue, the "spout" also cannot comprise a "lid" when the resides on a structure other than the spout.    (D.I. 18 at 9).    Essentially, Defendants contest the merits of Plaintiff's infringement theory by construing "spout" to mean "a channel that projects outward from some other structure, and through which a liquid can be discharged out of and away from the structure from which the spout projects." (*Id.*).  Defendants tell me that is the plain and ordinary meaning of "spout," citing extrinsic evidence and a children's nursery rhyme: "I'm a little teapot, short and stout.  Here is my handle.  Here is my *spout*." (*Id.*) (emphasis in original).

The Federal Circuit has directed that, at this stage of the litigation, a plaintiff is "entitled to all inferences in its favor on its theory [of infringement]." *Nalco*, 883 F.3d at 1349.  And, although Defendants would have me construe multiple terms in their favor, district courts have been cautioned against resolving claim construction disputes at this stage. *Id.* (reversing the district court's dismissal because "Defendants' arguments boil down to objections to [Plaintiff's] proposed claim construction . . ., a dispute not suitable for resolution on a motion to dismiss"); *Bos. Fog*, 2020 WL 1532372, at *4.  I am not prepared to construct the claims at this stage of the case and on this record of extrinsic evidence and nursery rhymes which is insufficient to adopt even a preliminary construction that would decide this issue.  Because the Complaint provides sufficient notice, because claim construction is inappropriate at the motion to dismiss stage in this case, and because Plaintiff is entitled to all inferences in its favor on its infringement theory, dismissal is

13

inappropriate. *See Nalco*, 883 F.3d at 1349–51 (reversing grant of motion to dismiss because the plaintiff "is entitled to all inferences in its favor on its [infringement] theory" and claim construction dispute was "not suitable for resolution on a motion to dismiss").

Next, Defendants argue that the limitations of claims 14 and 45 are not met in the Accused Products because they require a "neck extending from the reservoir," and the Lotus dispenser uses a liquid soap tube that intervenes and does not "extend" from the neck to the reservoir. (D.I. 18 at 14–16). Defendants argue that the plain and ordinary meaning, as set forth in extrinsic evidence, provides that "extend" means to "spread or stretch forth." (*Id.* at 15). Plaintiff disputes that Defendants' construction is appropriate, calling it "cherry-picked" and "unduly narrow." (D.I. 26 at 18). And Plaintiff further argues that the "liquid soap tube" that exists between the neck and the reservoir in the Lotus dispenser is part of the neck, and, therefore, is partially the conduit in communication with the reservoir. (*Id.* at 17). Defendants also argue that claim 14 and 45's requirements for "a neck extending from the reservoir to a conduit," (D.I. 1-1, Ex. A at cl. 14) and "a neck extending from the reservoir defining a conduit in communication with said reservoir" (*Id.* at cl. 45), should limit "extending" to mean "at least adjacent and contiguous." (D.I. 18 at 15). But neither the claims nor the limitations contain the words "adjacent" or "contiguous."

On this argument at this stage, I agree with Plaintiff. The Complaint provides sufficient notice of what feature is alleged to comprise a "neck extending from the reservoir." *See Nalco*, 883 F.3d at 1350. Defendants dispute Plaintiff's infringement theory, but they will have the chance to raise that challenge later.

Defendants' last argument proceeds similarly to its first: because of the liquid soap tube, the "cap" cannot be "coupling" the "neck" to the "reservoir." (D.I. 18 at 17). Defendants again argue for what they say is the plain and ordinary meaning, this time of "couple," and cite to

extrinsic evidence that allegedly supports their view. (*Id.*). Plaintiffs respond that this argument again ignores that the "liquid soap tube" of the Lotus dispenser is part of the neck in the Accused Products. (D.I. 26 at 19).[4]

Again, at this stage I agree with Plaintiff. The Complaint provides sufficient notice of Plaintiff's theories that the disputed limitation is met by the accused instrumentalities such that the Accused Products allegedly embody a "cap threaded to the reservoir and coupling the neck to the reservoir." *See Nalco*, 883 F.3d at 1350. Defendants may dispute the viability of Plaintiff's infringement theories in view of what they argue are properly construed claim terms, but resolution of that dispute is not appropriate at this time. *See UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 994 (Fed. Cir. 2024) ("if a claim's meaning [is not] so clear on the only point that is ultimately material", it is improper for a "district court to resolve a claim construction dispute in the context of adjudicating a Rule 12(b)(6) motion[.]"). Defendants are free to advance their non-infringement arguments on a motion for summary judgment. *See Mallinckrodt IP Unlimited Co. v. B. Braun Med., Inc.*, 2018 WL 2254540, at *1 (D. Del. May 17, 2018) ("[Defendants'] motion essentially asks the Court to take its contrary allegations as true and to resolve . . . infringement, on a motion filed pursuant to Federal Rule of Civil Procedure 12. This the Court cannot do."); *see also Fowler*, 578 F.3d at 210 (courts deny motions to dismiss when a reasonable reading of the complaint would entitle plaintiff to recovery).

---

[4]     Even if I agreed with Defendants that the "liquid soap tube" was not part of the neck, Plaintiff argues that there is nothing in the claims or limitations that cautions against "indirect coupling." (D.I. 18 at 8–9, 16–18) (citing *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1270 (Fed. Cir. 2010); (*see also* D.I. 1-1, Ex. A at 2:52–53; 3:50–21) ("[t]he reservoir body [] is connected to a spout [] via a neck" and "[A] motor [] and a motor coupler [] coupled to the motor via a motor shaft []"). At this stage, I agree with Plaintiff.

In the end, Defendants demand too much of the Complaint at this stage of the proceedings; Plaintiff need not "'prove its case at the pleading stage.'" *Bot M8*, 4 F.4th at 1356 (quoting *Nalco*, 883 F.3d at 1350). Accordingly, I recommend that Defendants' motion to dismiss for failure to state a claim be denied.

## IV.    CONCLUSION

For the foregoing reasons, I recommend that Stern's Motion to Dismiss for Lack of Jurisdiction over the Person be GRANTED and Defendants' Motion to Dismiss for Failure to State a Claim be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: February 4, 2026

_____
Laura D. Hatcher
United States Magistrate Judge

16